UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKY M. ARNTSEN,

Plaintiff,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,

Defendant.

CASE NO. 3:26-cv-05135-JCC-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Ricky M. Arntsen proceeds *pro se* in this 42 U.S.C. § 1983 action. Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) for failure to state a claim upon which relief may be granted or for judgment on the pleadings and, alternatively, based upon qualified immunity. Dkt. 31. Plaintiff has filed a response to the motion and Defendants have filed a reply. Dkts. 31, 36. Plaintiff has also filed a motion to compel compliance with subpoenas served on non-party Office of Corrections Ombuds (Dkt. 20), and the non-party Office of Corrections Ombuds has filed a motion to quash the subpoenas (Dkt. 25).

For the reasons below, the undersigned recommends that Defendants' motion to dismiss and for judgment on the pleadings (Dkt. 31) be GRANTED as provided below. The undersigned further recommends that Plaintiff's motion to compel compliance with subpoenas (Dkt. 20), and

the non-party Office of Corrections Ombuds' motion to quash subpoenas (Dkt. 25) should be DENIED as moot, with leave to re-move as provided below.

## BACKGROUND

Plaintiff Ricky M. Arntsen, a prisoner currently housed at Stafford Creek Corrections Center ("SCCC") proceeds pro se in this 42 U.S.C. § 1983 civil rights action. Dkt. 1. Plaintiff's operative complaint names as Defendants the Washington State Department of Corrections ("DOC"), Terisse Siek, SCCC Corrections Officer Davis, Don Spivey, and Jeff Tatro. Dkt. 1-3 at 3. Plaintiff names Defendants Siek, Davis, Spivey and Tatro in their official capacities and in their individual capacities. *Id.*

Plaintiff alleges he was an "HUB" worker at SCCC. *Id.* He alleges certain workers, including HUB workers, were called to breakfast early to allow them to arrive for work on time. *Id.* He alleges on October 28, 2022, he went to breakfast at the allotted time for HUB workers. *Id.* He alleges upon returning from breakfast prison staff were positioned in the rotunda near Defendant Siek's office inspecting individual's worker identification to make sure they were authorized to attend early breakfast. *Id.* He alleges that Defendant Davis stopped him and checked his ID and told plaintiff he was free to go. *Id.* He alleges that as he went to leave Defendant Siek yelled at him to come back, forced him back into the rotunda and demanded to see his ID. *Id.* He alleges Defendant Siek then wrote his name down on a tablet at the bottom of a list of names. *Id.* Plaintiff asked why she was writing down his name and Defendant Siek replied "Because I know you." *Id.* Plaintiff states that he stated that Defendant Siek should not write him up for something he didn't do. *Id.*

Plaintiff alleges Defendant Siek then caused a false report (negative behavior observation entry BOE) to be written based on Plaintiff allegedly improperly going to breakfast during the

time reserved for workers despite plaintiff showing his ID as a worker. *Id.* He states that Defendant Davis may have written the actual report but that it was Defendant Siek who caused the report to be written because she is the one who wrote Plaintiff's name down on the list of individuals who had improperly gone to the worker mainline for breakfast. *Id.*

Plaintiff alleges his seizure by Defendant Siek violated his Fourth Amendment rights and his Fourteenth Amendment liberty interest in participation in the prison meal service program, receiving meals and moving to and from meals safely and without unjust obstruction. *Id.* He alleges violation of DOC Policy 300.010, RCW 40.16.030, RCW 42.20.040, RCW 43.101.021, RCW 9A.72.080, RCW 9A.76.175, RCW 9A.080.010, RCW 9A.08.020, RCW 9A.08.030, RCW 4.22.015, RCW 4.22.030. *Id.*

Plaintiff indicates he appealed the BOE and, on November 7, 2022, the BOE was deleted as Plaintiff was found to be authorized to be at breakfast based on his worker status. *Id.* Plaintiff indicates he filed a grievance related to the filing of the BOE. *Id.*

Petitioner states that at the time of the incident he had petitioned for resentencing in his criminal conviction and feared the negative BOE, even if dismissed, would hurt his chances of receiving a reduced sentence. *Id.* He indicates this caused him stress and anxiety causing him headaches, nausea, vomiting, sleep deprivation, depression and anger. *Id.* Plaintiff states that he suffers from significant mental health issues and that the incident compounded with other issues to cause him to commit suicide later on. *Id.* He also indicates he did not go to breakfast a number of days after the incident due to fear of what Siek would do. *Id.*

Plaintiff alleges on November 9, 2022, Plaintiff received a copy of a similar false report (infraction) dated October 26, 2022, based on the same alleged behavior of attending breakfast when not an authorized worker. *Id.* Plaintiff states the false infraction report was issued by

Defendant Spivey and approved by Supervising Reviewer CUS Jeff Tatro on October 31, 2022. *Id.* The infraction stated Plaintiff should "cease all problematic behavior" and because Plaintiff believed he had not caused problematic behavior, he interpreted this as a threat to stop filing grievances. *Id.* Plaintiff alleges the infraction was an attempt to cover up for Defendant Siek's false report or was issued in retaliation for plaintiff filing a grievance against defendants Siek and Davis. *Id.*

Plaintiff alleges Defendant Spivey's actions violated DOC Policy 300.010, DOC Policy 460.00, RCW 40.16.030, RCW 42.20.040, RCW 43.101.021, RCW 9A.72.080, RCW 9A.76.175, RCW 9A.080.010. *Id.*

Plaintiff alleges Defendant Tatro also violated his rights by approving the infraction which he knew to be false. *Id.*

Plaintiff alleges that after a hearing, his infraction resulted in a not guilty finding. *Id.* Plaintiff indicates he filed a grievance against Defendant Spivey. *Id.*

Plaintiff alleges on April 25, 2023, Plaintiff went to his scheduled call-out to pick up legal mail. *Id.* Plaintiff was wearing sweatpants, a T-shirt and coat, as were other prisoners. *Id.* Defendant Spivey told plaintiff he was not dressed according to policy which required "khaki" pants and shirts to pick up legal mail and would not allow Plaintiff to pick up his mail until he changed. *Id.* Plaintiff was able to change and make it back just in time to pick up his legal mail. *Id.* Plaintiff alleges this dress code had never been required or enforced before and he was the only one told he needed to change in order to pick up his mail. *Id.* Plaintiff also alleges the other prisoners in the legal mail line who were not dressed according to policy were not black and were not "kicked out of line" as Plaintiff was. *Id.* Plaintiff alleges this was retaliation. *Id.*

Plaintiff further alleges that Defendants' actions may have been racially motivated. *Id.* Plaintiff alleges Defendant Siek had a practice of harassing and mistreating black prisoners and prisoners of color. *Id.* He alleges prison officials at SCC have some history of racially discriminating and weaponizing false reports against black prisoners. *Id.* He alleges there have been other grievances filed by other black prisoners and/or prisoners of color who asserted that Siek's actions towards them were racially motivated. *Id.* He also argues Defendants Spivy and Tatro's actions may have been racially motivated. *Id.*

Plaintiff alleges violation of the Fourteenth Amendment based on racial discrimination, and interference with Plaintiff's liberty interest in participation in the prison meal service program, receiving meals and moving to and from meals safely and without unjust obstruction; violation of the Fourth Amendment based on Defendant Siek's unjustified seizure of Plaintiff after he had shown his worker ID to defendant Davis; violation of the Ninth Amendment; violation of the First Amendment based on Defendant Spivey and Tatro's retaliation against Plaintiff for filing grievances; and violation of the following DOC or SCC Policies and state laws: DOC Policy 300.010, DOC Policy 460.00, SCCC 420.155, RCW 40.16.030, RCW 42.20.040, RCW 43.101.021, RCW 9A.72.080, RCW 9A.76.175, RCW 9A.080.010, RCW 9A.08.020, RCW 9A.08.030, RCW 4.22.015, RCW 4.22.030, RCW 9.01.120, RCW 9.94.050. *Id.*

Based upon these claims, Plaintiff seeks compensatory and punitive monetary damages against all Defendants. *Id.*

Defendants move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Dkt. 31. Defendants argue that Plaintiff fails to state a claim upon

which relief can be granted and, alternatively, that they are entitled to qualified immunity with respect to Plaintiff's claims.

## DISCUSSION

### A. Relevant Legal Standards

A motion for a judgment on the pleadings under Fed. R. Civ. P. 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999). Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion are functionally identical, the motion to dismiss standard applies to Rule 12(c) motions. *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).

A motion to dismiss can be granted only if Plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While the Court must accept all the allegations contained in a complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

In order to state a claim for relief under 42 U.S.C. § 1983, Plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

When defendants assert qualified immunity in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "'dismissal is not appropriate unless [the Court] can determine, based on the complaint

itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

In determining whether an official is entitled to qualified immunity, a court must determine whether, reading the allegations in the light most favorable to the Plaintiff: (1) Defendant's conduct violated a constitutional right; and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A Court may address the steps of the qualified immunity analysis in whichever order it finds most expedient. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The second step of the qualified immunity analysis provides that defendants are entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 916-17 (9th Cir. 1996); *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995), *overruled in part on other grounds by L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996); *see also Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) ("The plaintiff bears the burden to show that the contours of the right were clearly established.").

**B. Official Capacity Claims**

State officials sued in their official capacity for damages are not "persons" for purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer v.*

*Melo*, 502 U.S. 21, 27 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) ("Cornel cannot seek damages from Hawaii and the parole office because they are not 'persons' under § 1983."). State officials sued in their official capacity for prospective injunctive relief, are "persons" for purposes of § 1983. *See Will*, 491 U.S. at 71 n.10; *Cornel*, 37 F.4th at 531 (stating that "state officials are 'persons' under § 1983 when sued for prospective injunctive relief").

Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." (citing *Will*, 491 U.S. at 71)). In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer*, 502 U.S. at 25.

Plaintiff's complaint seeks only damages. Dkt. 1-3. Accordingly, Defendants' motion to dismiss should be granted and Plaintiff's official capacity claims for damages should be dismissed.[1]

**C. Fourth Amendment**

Plaintiff's complaint alleges Defendant Siek violated his Fourth Amendment rights when she "seized" him by calling him back and requiring him to show her his worker identification after Defendant Davis had already checked his worker identification and released him.

[1] The Court also notes that, even if Plaintiff did seek injunctive relief, Plaintiff has not alleged any facts to demonstrate a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation.

The Supreme Court has held in *Hudson v. Palmer*, that "the Fourth Amendment proscription against unreasonable searches [and seizures] does not apply within the confines of the prison cell[.]" 468 U.S. 517, 526 (1984). And there is generally "no Fourth Amendment right to be free from searches and seizures in prison." *Crozier v. Endel*, 447 F. App'x 861, 862 (9th Cir. 2011); *see Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (traditional right of privacy is fundamentally incompatible with continual prison surveillance of inmates and their cells for internal security). For instance, even strip searches have frequently been found not violate the Fourth Amendment rights of prisoners. *See Michenfelder v. Sumner*, 860 F.2d 328, 332–33 (9th Cir. 1988); *Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 322–23 (2012) (finding that the practice of strip searches of detainees at jails did not violate the Fourth Amendment).

The Court should find that Defendant Siek's calling Plaintiff over to check his worker identification on one occasion, even when it was previously checked by another corrections officer, fails to state a claim under the Fourth Amendment upon which relief may be granted. Plaintiff also identifies no clearly establish law, nor is the Court aware of any, establishing that a corrections officer calling a prisoner over to check his worker identification, even after it had been checked by another officer, violates the Fourth Amendment. Thus, alternatively, the Court should find Defendant is entitled to qualified immunity on this claim as Plaintiff fails to show Defendant Siek's actions in calling Plaintiff back to check his worker identification violated a clearly established statutory or constitutional right of which a reasonable person would have known.[2]

Defendants' motion should be granted, and this claim should be dismissed.

**D. Fourteenth Amendment**

---

[2] The Court notes that Plaintiff appears to only seek monetary damages as relief in this action.

**1. Due Process**

Plaintiff also claims Defendant Siek's actions in calling Plaintiff back to check his worker identification and in issuing him a false negative BOE violated plaintiff's liberty interest in participation in the prison meal service program, receiving meals and moving to and from meals safely and without unjust obstruction.

In order to obtain relief on a § 1983 claim based upon procedural due process, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Further, under *Sandin v. Conner*, 515 U.S. 472, 483-85 (1995) "a prisoner has no federal or state protected liberty interest unless a sanction is imposed that either invariably extends the length of his sentence or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Dorton v. Sterkel*, No. 25-16, 2026 WL 1494022, at *1 (9th Cir. May 28, 2026) (quoting *Sandin*, 515 U.S. at 483-85). The Ninth Circuit has explained that "'atypical and significant hardship' is a high bar," and "[w]e have held that prisons pose such a hardship only where they confine prisoners to their cells for at least twenty-three hours a day and impose additional severe limitations on human contact," or in certain circumstances where placement poses an automatic bar to eligibility for release. *Nielsen v. Thornell*, 101 F.4th 1164, 1171-72 (9th Cir. 2024).

"[A]llegations of false disciplinary actions do not state a due process claim because 'a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports.'" *Mickey v. Williams*, No. 3:24-CV-1751-RBM-LR, 2026 WL 2143201, at *2 (S.D. Cal. July 24, 2026); *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997); *Gadsden v.*

*Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.").

Here, Plaintiff fails to establish he has a protected liberty interest in participation in the prison meal service program without being subject to a check of his worker identification by corrections officers. The check of Plaintiff's worker identification by Defendant Siek on one occasion and the issuance of negative BOE – resulting in, effectively, a warning, that was subsequently overturned – does not rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life.

The Court should find that Defendant Siek's calling Plaintiff over to check his worker identification on one occasion, even when it was previously checked by another corrections officer, and the issuance of negative BOE – resulting in, effectively, a warning, that was subsequently overturned – fails to state a Due Process claim under the Fourteenth Amendment upon which relief may be granted. Plaintiff also identifies no clearly establish law, nor is the Court aware of any, establishing that a corrections officer calling a prisoner over to check his worker identification, even after it had been checked by another officer, and issuing a negative BOE resulting in a warning that is subsequently overturned, violates Due Process under the Fourteenth Amendment. Thus, alternatively, the Court should find Defendant is entitled to qualified immunity on this claim as Plaintiff fails to show Defendant Siek's actions violated a clearly established statutory or constitutional right of which a reasonable person would have known.

Defendants' motion should be granted, and this claim should be dismissed.

**2. Equal Protection**

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation and internal quotation marks omitted) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To establish a violation of Equal Protection, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

Evidence of disparate impact on minorities alone is not sufficient. *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). "[S]howing that different persons are treated differently is not enough without more, to show a denial of Equal Protection." *Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 230, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). Plaintiff must demonstrate that he was "treated differently [ ... ] because he belonged to a protected class." *Seltzer–Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995), (citing *Divers v. Department of Corr.,* 921 F.2d 191, 193 (8th Cir.1990)).

Plaintiff alleges in his complaint that Defendants Siek, Spivey and Tatro's actions may have been racially motivated because Plaintiff is black. But Plaintiff's allegations are speculative and based only on vague and generalized assertions, unsupported by specific facts, that Defendant Siek had a practice of harassing and mistreating black prisoners and prisoners of

color, and that "other grievances" had been filed by other black prisoners and/or prisoners of color against Defendant Siek. Plaintiff alleges insufficient facts to support his Equal Protection claim.

Plaintiff alleges Defendant Spivey's actions in issuing a similar false report (infraction) against Plaintiff, and Defendant Tatro's actions in authorizing the report, may have been racially motivated. But this allegation is also entirely speculative and unsupported by any facts.

Plaintiff alleges Defendant Spivey's actions in "kicking him out" of the line for legal mail and requiring him to change clothes because he did not comply with the dress code may have been racially motivated. He alleges other individuals who were not of color were in line and did not meet the dress code requirements but were not kicked out of line and required to change. But he does not allege, for instance, whether other individuals of color were also kicked out of line for failing to comply with the dress code or were permitted to stay in line. Plaintiff's allegations are insufficient to support an Equal Protection claim.

Plaintiff fails to allege facts to support a claim that Defendants acted with an intent or purpose to discriminate against the Plaintiff because he is black.

Defendants' motion to dismiss should be granted and Plaintiff's Fourteenth Amendment Equal Protection claims should be dismissed.

**E. First Amendment - Retaliation**

To prevail on a First Amendment retaliation claim, a plaintiff must allege and prove the defendants retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was

protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The filing of prison grievances and civil rights complaints qualifies as "protected conduct" for purposes of a First Amendment retaliation claim. *See Rhodes*, 408 F.3d at 567 ("because purely retaliatory actions taken against a prisoner for having exercised [the right to file prison grievances or pursue civil rights litigation in the courts] necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield.").

Here, Plaintiff has failed to plausibly allege Defendant Spivey issued a false infraction report *because of* Plaintiff's protected conduct in filing a grievance against Defendants Siek and Davis or that he "kicked [plaintiff] out" of the legal mail line and required him to change clothes because of the grievance filed against him. *See Rhodes*, 408 F.3d at 567 (plaintiff must allege adverse action was "*because of* ... that prisoner's protected conduct") (emphasis added). Plaintiff alleges no facts to indicate that Defendant Spivey was even aware of the grievances filed against Defendant Siek and Davis when he issued the infraction against Plaintiff or that he was aware of the grievance filed against himself when he "kicked [plaintiff] out" of the legal mail line and required him to change clothes. "If a defendant does not know of a plaintiff's protected conduct, it cannot substantially motivate a defendant's subsequent conduct." *Wriden v. Arias*, No. 3:24-CV-1240 JLS (LR), 2026 WL 310186, at *4 (S.D. Cal. Feb. 5, 2026) (citing *Pratt*, 65 F.3d at 808 (plaintiff's "sheer speculation" that defendants had knowledge of his protected conduct

insufficient to show retaliatory intent)); *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1164 (N.D. Cal. 2019) ("[I]f [plaintiffs] are claiming they were mistreated because of their speech, then they must show that each officer knew about their speech in the first place."); *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 WL 422575, at *9 (S.D. Cal. Feb. 4, 2019) (S.D. Cal. Feb. 4, 2019), *report and recommendation adopted*, No. 3:18-CV-0326-AJB-WVG, 2019 WL 3315567 (S.D. Cal. July 24, 2019) ("Because Plaintiff alleges no facts to show that [defendant] had any prior knowledge of this grievance, there are no facts to suggest that [defendant] issued the [rules violation report] in retaliation for the filing of a grievance.").

And "retaliation is not established simply by showing adverse activity by a defendant took place after protected speech; rather, Plaintiff must show a nexus between the two." *Wriden*, 2026 WL 310186, at *4 (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this")). While timing "may be considered circumstantial evidence of retaliatory intent, 'timing alone is insufficient' to support an inference that prison officials took an adverse action against a prisoner in retaliation *because of* a prisoner's participation in protected conduct." *Id.* (quoting *Pratt*, 65 F.3d at 808).

Here, Plaintiff merely speculates that the Defendants' actions were retaliatory for his filing grievances. Plaintiff filed a grievance against Defendants Siek and Davis on October 31, 2026, but the alleged false infraction report issued by Defendant Spivey is dated October 26, 2026. Plaintiff asserts that he did not receive the false infraction report until November 7, 2026, and thus speculates it was issued in retaliation for his filing a grievance against Defendants Siek and Davis. Plaintiff provides no facts showing any other nexus between the filing of the grievance against Defendants Siek and Davis and Defendant Spivey issuing the allegedly false

infraction report. This speculation of retaliatory motive is not sufficient to give rise to a claim for relief. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (noting there was no evidence the defendant knew of the plaintiff's protected conduct and holding "mere speculation that defendants acted out of retaliation not sufficient").

Likewise, Plaintiff merely speculates that Defendant Spivey's actions in "kick[ing] [plaintiff] out" of the legal mail line and required him to change clothes were retaliatory for Plaintiff's filing a grievance against Defendant Spivey. The timing of when Plaintiff filed the grievance against Defendant Spivey is unclear – the Court notes that Defendant Spivey issued the allegedly false infraction report in October 2022, but the incident related to the legal mail line occurred in April 2023. But even assuming Defendant Spivey "kicked [Plaintiff] out" of the legal mail line directly after Plaintiff filed the grievance, such timing alone is insufficient to support an inference of retaliation.

Thus, Plaintiff has not stated a retaliation claim against Defendant Spivey.

Defendants' motion to dismiss should be granted and Plaintiff's First Amendment retaliation claims should be dismissed.

**F. Ninth Amendment**

Plaintiff also alleges a violation of the Ninth Amendment to the United States Constitution. Plaintiff alleges no facts to explain the basis upon which he believes he can bring a Ninth Amendment claim. The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation," *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996)

(citing cases). It is "*not* a source of rights as such; it is simply a rule about how to read the Constitution." *San Diego*, 98 F.3d at 1125 (quoting Laurence H. Tribe, American Constitutional Law 776 n. 14 (2d ed. 1988)) (emphasis in original); *and see Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) ("The ninth amendment has never been recognized as independently securing any constitutional right") (internal citations omitted).

Accordingly, Defendant's motion to dismiss should be granted and Plaintiff's Ninth Amendment claim should be dismissed.

**G. State Law Claims**

Plaintiff also alleges violation of the following DOC or SCC Policies and state laws: DOC Policy 300.010, DOC Policy 460.00, SCCC 420.155, RCW 40.16.030, RCW 42.20.040, RCW 43.101.021, RCW 9A.72.080, RCW 9A.76.175, RCW 9A.080.010, RCW 9A.08.020, RCW 9A.08.030, RCW 4.22.015, RCW 4.22.030, RCW 9.01.120, RCW 9.94.050.

A district court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over state law claims arising from the same set of operative facts that support a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a)). However, "the federal court should decline the exercise of jurisdiction" when "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. § 1367(c).

The undersigned recommends the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that those claims should be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if …the district court has dismissed all claims over which it has original jurisdiction[.]"); *Artis v. District of Columbia*, 583 U.S. 71, 74 (2018)

(Ordinarily, when a district court dismisses "all claims independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state claims, as well.).

If Plaintiff is granted leave to amend his § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation as discussed below, Plaintiff's state law claims should also be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

The Court also notes that with respect to the DOC and SCC policies, Plaintiff fails to show he can bring an independent legal claim for violation of a DOC or SCC policy. *See Novalic v. PeaceHealth & Dep't of Lab. & Indus.*, 31 Wash. App. 2d 1066 (2024), *review denied sub nom. Novalic v. PeaceHealth*, 4 Wash. 3d 1003, 561 P.3d 740 (2025) ("[T]he Department [of Labor and Industries] does not have the authority to create a legal restriction simply by adopting a policy, and it is well established that Department policies do not have the force of law, unlike statutes and regulations."); *Fiore v. PPG Indus., Inc.*, 169 Wash. App. 325, 335, n.3, 279 P.3d 972, 978 (2012) ("An agency's administrative policies ... hav[e] no force or effect as a law or regulation ...."), *review denied*, 175 Wn.2d 1027 (2012); *see also Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 624-25, 416 P.3d 1205 (2018) ("[A]dministrative policies do not even have the force of regulations, and deference to such policies is inappropriate ...."). Thus, these claims would also be subject to dismissal on this basis.

And, with respect to the alleged violation of RCW 9A.80.010, RCW 9A.72.080, RCW 9A.76.175, RCW 9A.08.010, and RCW 9A.08.030, these appear to be criminal statutes and, as Defendants note, this is a civil matter, and Plaintiff is not a prosecutor. Dkt. 31 at 9; RCW 36.27.020. Thus, these claims would also be subject to dismissal on this basis.

Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims should be dismissed without prejudice.

**H. Leave to Amend**

The Ninth Circuit has "established that a pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). In dismissing for failure to state a claim under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal citations and quotation marks omitted).

With respect to Plaintiff's § 1983 official capacity claims for damages and his claims under the Fourth Amendment, Ninth Amendment, and the Fourteenth Amendment Due Process Clause, the deficiencies in these claims cannot be overcome by amendment. Accordingly, these claims should be dismissed with prejudice and without leave to amend.

With respect to Plaintiff's § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation, it is conceivable that Plaintiff could allege additional facts to overcome the deficiencies in his complaint with respect to these claims. Plaintiff has not been given an opportunity to amend his complaint to cure the identified deficiencies in these claims. Accordingly, Plaintiff's § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation should be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

With respect to Plaintiff's state law claims, the undersigned has recommended the Court decline to exercise supplemental jurisdiction over those claims at this time as Plaintiff has not stated a federal claim. However, if Plaintiff is granted leave to amend his § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation, Plaintiff's state law claims should also be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

**I. Pending Motions**

Plaintiff has also filed a motion seeking to "disregard and strike defendants' motion to dismiss." Dkt. 39. Plaintiff argues Defendants' motion to dismiss is improper because it was filed after Defendants filed an answer to the complaint. *Id.* Plaintiff is correct that a motion to dismiss pursuant to Fed. R. Civ P. 12(b)(6) must be brought before defendants file an answer. *See* Fed. R. Civ P. 12(b). But Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Accordingly, Plaintiff's motion should be denied because, although Defendants also cite Fed. R. Civ. P. 12(b)(6) as a basis for their motion, Defendants also brought the motion as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

Plaintiff has also filed a motion to compel compliance with subpoenas served on the Office of Corrections Ombuds (Dkt. 20) and the Office of Corrections Ombuds has brought a motion to quash the subpoenas (Dkt. 25). If the undersigned's recommendation that the complaint be dismissed with leave to amend only certain claims is adopted, the Court should deny these motions as moot with leave to re-move as appropriate upon Plaintiff's filing of an amended complaint.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that:

(1) Defendants' motion to dismiss and for judgment on the pleadings (Dkt. 31) be GRANTED. Plaintiff's § 1983 official capacity claims for damages and his claims under the Fourth Amendment, Ninth Amendment, and the Fourteenth Amendment Due Process Clause should be dismissed with prejudice. Plaintiff's § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation should be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

(2) The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims should be dismissed without prejudice as Plaintiff has not stated a federal claim. If Plaintiff is granted leave to amend his § 1983 claims under the Fourteenth Amendment Equal Protection Clause and the First Amendment for alleged retaliation, Plaintiff's state law claims should also be dismissed without prejudice and with leave to amend within thirty (30) days of the order adopting this report and recommendation.

(3) Plaintiff's motion seeking to "disregard and strike defendants' motion to dismiss" (Dkt. 39) should be DENIED.

(4) Plaintiff's motion to compel (Dkt. 20) and Defendants' motion to quash (Dkt. 25) should be DENIED as moot with leave to re-move as appropriate upon Plaintiff's filing of an amended complaint.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 17, 2026.** The Clerk should note the matter for **August 18, 2026**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 31st day of July, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge